UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

In re:

HEPAR BIOSCIENCE LLC,
TAX ID #: 74-3230210

      Debtor.

Bankr. Case # 15-40057
Chapter 11

**DEBTOR'S MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL AND REQUEST FOR A PRELIMINARY HEARING**

     **COMES NOW** the Debtor, by and through its attorney of record, and moves the Court to enter an Order Authorizing Debtor's Use of Cash Collateral, and for Preliminary Hearing and Final Hearing if necessary. In support of this Motion, Debtor states the following:

     1. Debtor filed for Chapter 11 protection on February 20, 2015.

     2. Debtor is in the business of receiving porcine (pork) by-products (concentrated peptone, a functional pork protein and animal fat) from its largest supplier (SPL/Mobren) and other meat by-products from other suppliers that are primary used in the porcine animal nutrition feed industry (concentrated porcine peptone) and biodiesel or animal feed business (animal fat).

     In mid-May 2013, PEDv (porcine epidemic diarrhea virus) was first detected in the United States having arrived from and identified originally from China by its unique DNA. Some leading experts in the pork industry have advocated against same species feeding consumption similar to the governmental FDA imposed prohibition of same species ruminant (bovine or beef) origin animal protein feeding in 2009. As it relates to the business of Hepar, this advice has adversely affected its ability to sell concentrated porcine peptone including affecting its value.

The long term affect PEDv will have on pork producers across the globe is uncertain. In the short term, there has been a significant shift on the part of producers, away from same-species feed in favor of lower risk functional proteins (vegetable based and non-porcine species) as a hedge against same species feed consumption risk. This shift has resulted in what appears to be a "new normal" and many producers have made adjustments to their feeding practices. Whether those changed buying habits can be reversed in the event that the PEDv is controlled is unknown at best.

Starting the first quarter of 2014, Hepar's business has been severely impacted. Hepar had its best year ending in 2013, at an EBITDA of nearly $14MM. Hepar currently has an annualized EBITDA of less than $5MM. Hepar has an outstanding bank loan balance as of February 17, 2015, in the principal amount of $19,122,637.54 owed to Northwest Bank. On January 26th, 2015, Hepar was sent a "Notice of Default" relative to this indebtedness. Hepar has been in the process of constructing a plant in North Sioux City, SD. That process has been ongoing since 2012. Hepar has a Processing Agreement executed in 2012 with SPL/Mobren which obligates Hepar to process certain raw materials "at cost" for SPL/Mobren. In order to be able to meet the obligations under the Processing Agreement, Hepar will be required to spend $6,500,000.00 including taxes. If Hepar is not able to meet the requirements of the Processing Agreement, it runs the risk of losing the SPL/Mobren Supply Agreement. Without the SPL/Mobren Supply Agreement, Hepar will not be able to continue its business.

3. This Motion is brought in accordance with 11 U.S.C § 361 and 363, Rule 4001 and Local Rule 4001-2.

4. Debtor proposes to use the amounts listed on the attached Exhibits to maintain the operation of its business. Northwest Bank of Sioux City, IA, holds a perfected lien possession

on all of Debtor's business assets. Debtor needs use of accounts receivable for cash collateral to continue its business and proceed in this Chapter 11.

5. Debtor requests preliminary authorization to fund the expenses identified on the Exhibit A attached hereto for the period from the filing date until March 11, 2015. Debtor requests a preliminary hearing upon 48 hours notice to approve the preliminary authorization laid out in Exhibit A, attached hereto.

6. Attached as Exhibit B is Debtor's Proposed Request for Authorization to use cash collateral for the period March 12 – March 31, 2015. Debtor requests in the event a final hearing for approval is necessary, that the Exhibit B Budget be approved until said hearing could be held.

7. The attached Exhibit C is the remaining request for the cash collateral until the end of April, 2015, with the budget set out on a monthly basis. Debtor requests the Courts Order Authorizing the Use of Cash Collateral through the Exhibit C period.

8. Debtor provided Northwest Bank's attorney the attached Exhibits for review and the request for use of cash collateral, prior to filing and anticipates entering into a stipulation for the use of cash collateral and adequate protection.

9. As adequate protection, Debtor proposes to grant Northwest Bank a replacement lien for the time period requested herein for the use of cash collateral on all post-petition receivables to the extent such collateral is used. Furthermore, Debtor grants Northwest Bank the Right to Inspect the Collateral, upon reasonable notice, and Debtor agrees to keep the collateral insured and to maintain all collateral in its present condition, absent ordinary wear and tear. Furthermore, Debtor will maintain its Debtor in possession account at Northwest Bank and will deposit all receivables into said account during the term of this stipulation.

**WHEREFORE**, Debtor requests preliminary authorization to use cash collateral as per

the attached Exhibits and as requested herein; for an Order Granting Replacement Liens to Northwest Bank and such other adequate protection set forth in the Motion; and for such other and further relief as appropriate.

Dated this 20th day of February, 2015.

GERRY & KULM ASK, PROF. LLC:

By: /s/ Clair R. Gerry
Clair R. Gerry
Attorney for Debtor
507 West 10th Street
P.O. Box 966
Sioux Falls, SD  57101-0966
Telephone:  (605) 336-6400
Fax:  (605) 336-6842
Email:  gerry@sgsllc.com
